THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| In re TROY R. MORGAN,<br><br>Debtor. | **MEMORANDUM DECISION<br>AND ORDER** |
| BRENT MORGAN and SUMMIT<br>DEVELOPMENT AND LENDING GROUP,<br>INC.,<br><br>Appellants,<br><br>v.<br><br>TROY R. MORGAN,<br><br>Appellee. | Case No. 2:20-cv-00291-DBB<br><br>District Judge David Barlow |

At the conclusion of a chapter 7 bankruptcy proceeding, bankruptcy courts typically enter an order that discharges most, if not all, of the debtor's pre-bankruptcy debts.[1] To protect the fresh start a discharge in bankruptcy provides, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any" debt that has been discharged and "voids any judgment at any time obtained" that determines that the debtor is personally liable for a discharged debt.[2] A creditor who violates a debtor's discharge can be held in civil contempt and subjected to sanctions.[3]

At issue here are a bankruptcy court's orders finding that Appellants Brent Morgan (Brent) and Summit Development and Lending Group, Inc. (Summit) willfully violated Appellee

---

[1] 11 U.S.C. § 727(a)–(b). Debts excepted from discharge are listed in 11 U.S.C. § 523.

[2] 11 U.S.C. § 524(a)(1)–(2).

[3] *Paul v. Inglehart (In re Paul)*, 534 F.3d 1303, 1306–07 (10th Cir. 2008).

Troy Morgan's (Troy) bankruptcy discharge and awarding Troy $68,180.27 in damages.[4] Appellants argue on appeal that the bankruptcy court's orders should be reversed or, in the alternative, that the damages awarded to Troy should be reduced.[5] The appeal is fully briefed[6] and the court has reviewed the record.[7] For the following reasons, the bankruptcy court's orders are affirmed.

## BACKGROUND

The history of this case involves over a decade of bitter relations between two family members. Brent and Troy are brothers-in-law who owned and operated similar, but separate, lending businesses.[8] In 2009, a rift in their relationship began to develop over business troubles and because Troy allegedly failed to pay back loans Brent and his wife (Troy's sister) had given him.[9]

On May 18, 2010, Troy filed for bankruptcy under Chapter 7 of the Bankruptcy Code.[10] Brent was not listed as a creditor.[11] After the bankruptcy trustee determined that Troy had no

---

[4] Appellants' Amended Notice of Appeal and Statement of Election, ECF No. 10, filed June 17, 2020. Because Brent Morgan and Troy Morgan share a last name, the court refers to them as Brent and Troy to avoid confusion.

[5] *See generally* Appellants' Opening Brief, ECF No. 18, filed December 8, 2020.

[6] *See id.*; Appellee's Response Brief, ECF No. 23, filed February 8, 2021; Appellants' Reply Brief, ECF No. 29, filed March 15, 2021.

[7] The court has determined that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. Bank. P. 8019(b)(3).

[8] Appellants' App. at 441. Appellants' appendix was filed as two separate docket entries (ECF Nos. 19, 20), but the pagination between the files is continuous. Thus, all references to Appellants' appendix will be to the appendix page number. Brent's business, Summit, is the other appellant in this case. *Id.*

[9] *Id.* at 441, 829–30, 838.

[10] *Id.* at 18–26, 441.

[11] *Id.*

assets to distribute to creditors, the court granted a discharge under 11 U.S.C. § 727 on September 1, 2010.[12]

The rift between Brent and Troy began to intensify in 2014 when the Securities Division of the Utah Department of Commerce instigated an administrative action against Appellants.[13] The Securities Division alleged that Brent had defrauded certain investors in 2007.[14] Troy was not a party in the administrative action, but Brent claims that the alleged violations were based in large part on Troy's interactions with an investor.[15] Brent contested the allegations but was eventually ordered to pay a fine of approximately $140,000.[16] He appealed the fine, but it was upheld by the Utah Court of Appeals in 2018.[17]

On July 31, 2018, Appellants commenced an action against Troy in Utah state court related to the fine imposed by the Securities Division.[18] They claimed that Troy should indemnify them for the fine because it was incurred due to his actions and he would be unjustly enriched if he was not required to do so.[19] Troy twice requested additional time to respond to Appellants' complaint, but he never filed an answer.[20] The state court subsequently entered default judgment against him for the full amount of the fine.[21]

---

[12] *Id.* at 68, 441.

[13] *Id.* at 87–101, 442.

[14] *Id.* at 87–101.

[15] *Id.* at 154, 156.

[16] *Id.* at 105, 231–45, 442.

[17] *Id.* at 442. Pursuant to an agreement with the Securities Division in 2019, Appellants were required to pay only $68,166 of the fine. *Id.*

[18] *Id.* at 103–07.

[19] *Id.*

[20] *Id.* at 442.

[21] *Id.* at 166, 442.

A few days after the default judgment was entered, Troy sent an email to Brent asserting that because the transactions Appellants' state court action was based on occurred in 2007 or 2008, he was released from any liability for those transactions by his bankruptcy discharge in 2010.[22] Troy further asserted that Brent's state court action violated his bankruptcy discharge, and if Brent did not dismiss the action and judgment against him, Troy would instigate a contempt action in bankruptcy court.[23] Troy filed a notice regarding his bankruptcy with the state court a few weeks later to inform the court of his position that Brent's case should be dismissed because it violated his bankruptcy discharge.[24] However, the court appears to have taken no action with regard to the bankruptcy notice.[25]

Despite notice of the bankruptcy, Appellants filed an application for a writ of garnishment on the default judgment in January 2019.[26] The court issued the writ on February 14, 2019, after holding a hearing at which Troy did not appear.[27] Instead of beginning to garnish Troy's wages immediately, Brent began negotiating a settlement with Troy.[28] However, the negotiations fell through, and Brent began receiving Troy's garnished wages on May 2, 2019.[29]

A few days later, Troy filed a "Reply and Request for Hearing" on Brent's writ of garnishment, arguing that it had been issued improperly because it violated the discharge order from his bankruptcy.[30] Brent filed an opposition to Troy's reply in which he argued that the court

---

[22] *Id.* at 442, 1178.

[23] *Id.* at 1178.

[24] *Id.* at 379, 1204.

[25] *Id.* at 1204.

[26] *Id.* at 443, 1204–05.

[27] *Id.*

[28] *Id.* at 443, 1191–98.

[29] *Id.* at 443.

[30] *Id.* at 443, 1180–82.

should reject Troy's objection to the writ of garnishment because his reply was untimely and challenged the judgment underlying the writ rather than the writ itself.[31] After a hearing, the state court overruled Troy's objection because, as Brent had argued in his opposition, the reply was untimely and Troy could not attack the validity of the judgment underlying the writ of garnishment during garnishment proceedings.[32] Thus, Appellants were permitted to proceed with garnishment and have, to date, garnished approximately $4,700 of Troy's wages.[33]

On July 8, 2019, Troy filed a motion in the United States Bankruptcy Court for the District of Utah to reopen his bankruptcy case for the purpose of obtaining a civil contempt order against Appellants.[34] He argued that Appellants should be held in contempt and sanctioned because their state court action and garnishment proceedings violated his bankruptcy discharge.[35] Appellants objected to Troy's motion.[36] After conducting a preliminary hearing, the bankruptcy court reopened Troy's bankruptcy case and entered a scheduling order for addressing the merits of Troy's contempt claim.[37]

Appellants subsequently filed a motion to dismiss Troy's claim.[38] They argued that Troy's contempt claim should be dismissed, and his bankruptcy case closed, because the claim was barred by res judicata and on equitable grounds.[39] Even if Troy's contempt claim was not

---

[31] *Id.* at 443, 1223–25.

[32] *Id.* at 348–49, 443.

[33] *Id.* at 443.

[34] *Id.* at 73–85, 443–44.

[35] *Id.* Appellants stopped garnishing Troy's wages when he filed his motion to reopen his bankruptcy. *Id.* at 443–44.

[36] *Id.* at 119–51, 444.

[37] *Id.* at 172–74, 444.

[38] *Id.* at 177–205, 444. Brent later characterized the motion to dismiss as a motion to reclose the bankruptcy case. *Id.* at 444.

[39] *Id.* at 188–200.

barred, Appellants argued, Troy had failed to establish that Appellants should be held in contempt and sanctioned.[40]

The bankruptcy court addressed Appellants' res judicata argument independently in a bench ruling on December 5, 2019.[41] The bankruptcy court noted that res judicata under Utah law includes both claim preclusion and issue preclusion.[42] The court found, among other things, that the state court did not decide the dischargeability issue, that only the Bankruptcy Court could decide whether sanctions should be imposed for a violation of its discharge order, and that neither claim nor issue preclusion prevented Troy's sanctions claim from proceeding.[43]

After holding additional hearings, the bankruptcy court ruled on the merits of Troy's motion for contempt sanctions on April 16, 2020.[44] The bankruptcy court rejected Appellants' argument that Troy's motion was barred on equitable grounds.[45] It then found that Appellants had willfully violated Troy's discharge order and, after obtaining additional filings and conducting a hearing, awarded Troy a total of $68,180.27 in damages.[46] Appellants filed a notice of appeal with this court on April 30, 2020.[47]

---

[40] *Id.* at 200–05.

[41] *Id.* at 444, 617–40.

[42] *Id.* at 625–26.

[43] *Id.* at 617–35.

[44] *Id.* at 440–69. The bankruptcy court emphasized that it addressed only the issues of whether Appellants' claims against Troy fell within his bankruptcy discharge. *Id.* at 444–45. The bankruptcy court informed the parties that any claim seeking to revoke Troy's discharge, or to determine whether Appellants' claims against Troy were excepted from discharge under 11 U.S.C. § 523, must be addressed in a separate adversary proceeding. *Id.* Although Appellants stated their intent to initiate such a proceeding, they did not do so before the bankruptcy court ruled on the merits of Troy's claim. *Id.* at 445.

[45] *Id.* at 448–57.

[46] *Id.* at 457–67, 612–14. The damages included attorneys' fees, costs, and the amount of wages Appellants had garnished from Troy. *Id.* at 614.

[47] ECF No. 1. As noted above, Appellants filed an amended notice of appeal on June 17, 2020. ECF No. 10.

## ANALYSIS

Appellants raise three issues on appeal. First, they argue that the bankruptcy court erred in concluding that res judicata did not bar it from determining whether their claims against Troy had been discharged, which was a prerequisite to finding that they violated his discharge.[48] Second, even if res judicata did not apply, the bankruptcy court erred in finding that Appellants violated Troy's discharge injunction willfully.[49] Finally, Appellants argue that even if sanctions for willful violations were appropriate, the damages awarded to Troy should be reduced because the fees awarded to some of his attorneys were improper, unreasonable, and excessive.[50]

### I. Claim Preclusion Did Not Bar the Bankruptcy Court from Determining whether Appellants' Claims against Troy Were Discharged in Deciding Troy's Motion for Contempt Sanctions.

The court must analyze de novo the bankruptcy court's conclusions of law regarding the applicability of res judicata.[51] In determining whether a state court judgment has res judicata effect in subsequent federal litigation, a federal court must apply the law of the state in which the judgment was entered.[52] In this case, that is Utah.

Utah law recognizes "two distinct branches" of res judicata: "claim preclusion and issue preclusion."[53] Claim preclusion bars relitigation of causes of action which have already been

---

[48] ECF No. 18 at 2, 15–31.

[49] *Id.* at 2, 31–39.

[50] *Id.* at 2, 40–52.

[51] *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007).

[52] *See* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[Section] 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82 (1982))).

[53] *Mack v. Utah State Dep't of Com., Div. of Sec.*, 221 P.3d 194, 203 (Utah 2009). It is important to note that although issue preclusion is a branch of res judicata under Utah law, it is often referred to as "collateral estoppel" instead of "res judicata," which frequently refers only to claim preclusion. *See Buckner v. Kennard*, 99 P.3d 842, 846–47 (Utah 2004). To avoid any confusion as to which branch of res judicata is being discussed, the court will refer to "claim preclusion" or "issue preclusion" specifically instead of res judicata generally.

resolved by a final judgment on the merits in a prior lawsuit.[54] Issue preclusion is more narrow and bars relitigation of "facts and issues underlying causes of action" that have already been litigated.[55] In this case, Appellants challenge the bankruptcy court's conclusions regarding the applicability of claim preclusion only.

In Utah, claim preclusion applies when (1) two actions involve the same parties; (2) a claim raised in the second action was raised, or could and should have been raised, in the first; and (3) the first action concluded with a final judgment on the merits.[56] Whether a claim is the same as one previously raised, or that could and should have been raised, is determined by whether it "arise[s] from the same operative facts, or in other words from the same transaction."[57]

Appellants argue that there are two reasons the bankruptcy court should have denied Troy's motion for contempt sanctions due to claim preclusion.[58] First, Appellants argue that claim preclusion applied to Troy's motion for contempt sanctions because determining whether their claims were discharged was necessary to deciding whether Troy's discharge was violated, and Troy could and should have argued that their claims were discharged as an affirmative defense in the original state court action but chose not to.[59] Second, Appellants argue that Troy actually did raise his discharge as a defense during the garnishment proceedings, and the state court rejected it.[60] Thus, even if Troy's failure to assert his discharge as an affirmative defense

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Gillmor v. Fam. Link, LLC*, 284 P.3d 622, 627 (Utah 2012) (quoting *Mack*, 221 P.3d at 203).

[58] ECF No. 18 at 15–19.

[59] *Id.* (relying on Utah R. Civ. P. 8(c)).

[60] *Id.* at 19; ECF No. 29 at 8–11.

does not have preclusive effect, the state court's rejection of Troy's discharge argument during garnishment proceedings surely does.[61]

A close examination of these arguments reveals that Appellants attempt to turn what is actually a matter of issue preclusion into a matter of claim preclusion. Under Utah law, a claim for purposes of res judicata is a "situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf," usually in the form of a "remedy for injury suffered by the [claimant]."[62] An issue, on the other hand, is "a 'certain and material point, affirmed by one party and denied by the other'" that the court must resolve but which, on its own, does not entitle a party to relief.[63]

In the state court action, Troy could have asserted his discharge as an affirmative defense. Although a defense is not a "claim" or "cause of action,"[64] claim preclusion usually bars relitigation of defenses that were or could have been raised when they are subsequently raised "in what is essentially a single and continuing controversy over the appropriate relief to give for a single wrong or closely related group of wrongs."[65] However, that is not what occurred here.

In the bankruptcy court, Troy had a distinct cause of action, civil contempt, which requires showing that a creditor knew of and "violated a specific and definite court order," in this

---

[61] ECF Nos. 18 at 19; 29 at 8–11.

[62] *Swainston v. Intermountain Health Care, Inc.*, 766 P.2d 1059, 1061 (Utah 1988) (quoting *Rhodes v. Jones*, 351 F.2d 884, 886 (8th Cir. 1965)).

[63] *Id.* (quoting *Donahue v. Susquehanna Collieries Co.*, 138 F.2d 3, 4 (3d Cir. 1943)).

[64] Under Utah law, a "claim" for purposes of claim preclusion is synonymous with a "cause of action," *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 965 (Utah 2008), and means, as mentioned above, a "situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf." *Swainston*, 766 P.2d at 1061. An affirmative defense, on the other hand, is a fact or set of facts that precludes liability even if all the allegations in a plaintiff's complaint are true. *See Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 534 (Utah 2002); *State v. Lynch*, 246 P.3d 525, 529 (Utah Ct. App. 2011). Under these definitions, a fact that gives rise to an affirmative defense usually does not give rise to a cause of action. If it did, it would be a counterclaim which, if it arose from the same transaction, would be a compulsory counterclaim. *See* Fed. R. Civ. P. 13(a).

[65] *See Bradshaw v. Kershaw*, 627 P.2d 528, 531 (Utah 1981).

case, Troy's discharge order.[66] Although showing that Appellants' claims were discharged was necessary to establishing both an affirmative defense in state court and the civil contempt claim in bankruptcy court, it was merely an issue (albeit an important one) underlying Troy's civil contempt cause of action, not the cause of action itself.[67] A finding that Appellants' claims were discharged would not, standing alone, entitle Troy to relief in the bankruptcy court.[68] The facts and evidence otherwise necessary to establish civil contempt went far beyond the facts upon which his affirmative defense would have been based.[69] Accordingly, the operative facts were not "the same,"[70] Brent's characterization of them notwithstanding.

Accordingly, whether res judicata barred the bankruptcy court from determining whether Appellants' claims against Troy were discharged for purposes of his motion for contempt sanctions is a question of issue preclusion, not claim preclusion. Because Appellants have abandoned any issue preclusion argument on appeal, the court need not consider whether it applies.[71]

---

[66] *See Nielsen v. Westergard (In re Nielsen)*, 53 F.3d 342 (10th Cir. 1995) (unpublished) (citing *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 449 (10th Cir. 1990)).

[67] *See Oman*, 194 P.3d at 966–67 (explaining that "issue preclusion corresponds to the facts and issues underlying a cause of action" and applies when two different claims involve "the same dispositive issue"); *Swainston*, 766 P.2d at 1061 (explaining that "[a] cause of action is necessarily comprised of specific elements [issues] which must be proven before relief is granted").

[68] *See Swainston*, 766 P.2d at 1061 (a matter is an issue when "[n]o relief is inherent in [its] resolution").

[69] Troy's affirmative defense to Appellants' claims was based in events leading up to and culminating in his discharge in bankruptcy, while his civil contempt claim began with his discharge but was fundamentally based on Appellants' actions after the discharge. In other words, apart from the common issue of whether Appellants' claims were discharged, Troy's civil contempt claim arose from a completely different transaction than his discharge affirmative defense and, thus, was not the same claim. *See Gillmor*, 284 P.3d at 627 (explaining that claims are the same for purposes of claim preclusion when they arise from "a common nucleus of operative facts" (quoting Restatement (Second) of Judgments § 24 cmt.b)).

[70] ECF No. 18 at 18.

[71] *See Tran v. Trs. of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived."). Even if Appellants had challenged the bankruptcy court's conclusions regarding issue preclusion here on appeal, the bankruptcy court was not barred from resolving the discharge issue. Issue preclusion applies when (1) the party against whom issue preclusion is asserted was a party in the prior lawsuit, (2) the issue decided in the prior lawsuit is identical to the one presented in the later lawsuit, (3) the issue was completely, fully, and fairly litigated in the first lawsuit, and (4) the first suit resulted in a final

Even if Troy's discharge affirmative defense and civil contempt claim could be regarded as the same claim due to the overlapping discharge issue, claim preclusion would still not apply because Troy's motion for contempt sanctions could not have been brought in state court.[72] Troy had a right under federal law to move for contempt sanctions and could have done so only in the bankruptcy court that granted his bankruptcy discharge.[73] Although the state court had the authority to rule on the underlying dischargeability issue, it could not have provided the contempt sanctions Troy sought in bankruptcy court..[74]

Appellants argue that not applying claim preclusion under the present circumstances will allow debtors who obtain adverse adjudications regarding their discharge in state courts to get a "second bite at the apple" by collaterally attacking those adjudications in bankruptcy court

---

judgment on the merits. *Oman*, 194 P.3d at 965–66. The dischargeability issue was not raised by either party in the original state court action and, thus, was not actually litigated or decided. Restatement (Second) of Judgments § 27 cmt.d (explaining that an issue is actually litigated when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined"). Nor was deciding the dischargeability issue necessary to ruling on Appellants' claims in state court. *See Oman*, 194 P.3d at 966 (finding that an issue was fully litigated when it "was squarely before the court, was litigated by the parties, and was necessary to the court's final judgment on the [plaintiff's] claim"). The default judgment in state court decided only that Troy was liable, not whether that liability was discharged by his bankruptcy discharge.

The state court's rejection of Troy's discharge argument during garnishment proceedings presents a marginally closer question but also does not carry preclusive effect due to issue preclusion. Although Troy's objection raised the discharge issue, the court never addressed its merits. Appellants' App. at 253–63. Instead, it adopted Brent's position that Troy's objection was untimely and an attack on the underlying judgment, which is not permitted in garnishment proceedings. *Id.* at 258–63. In short, Brent urged the state court not to decide the dischargeability issue and prevailed. ECF No. 19-1 at 344–49. He cannot now successfully argue that the state court decided the dischargeability issue after all.

[72] *See Mack*, 221 P.3d at 204 ("A claim is not the same claim, in terms of claim preclusion, if it could not have been brought in the first action, and, of course, a party may not bring a claim in a first action if the court lacks subject matter jurisdiction."). Additionally, most of the conduct on which Troy's contempt claim was based did not occur until after default judgment was entered against him.

[73] *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Taggart*, 139 S. Ct. at 1801–02 (acknowledging that bankruptcy courts have the authority under § 105 to hold creditors in civil contempt and award sanctions); *In re Skinner*, 917 F.2d 444, 447–50 (10th Cir. 1990) (explaining that a bankruptcy court's authority to award contempt sanctions is an "adjudication of a right created by federal statute" and part of debtor's right "to have his affairs wound up in a court of bankruptcy").

[74] *See* Restatement (Second) of Judgments § 26(c) & cmt.c(1) (recognizing an exception to claim preclusion when a party "was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action," such as when a cause of action is based on "a federal statute enforceable exclusively in a federal court").

through contempt proceedings.[75] However, the court does not share this concern. As discussed

above, whether a debt was discharged is an issue that, if actually litigated in state court, will have

preclusive effect in a subsequent action for contempt sanctions in bankruptcy court.[76]

Additionally, to the extent not applying claim preclusion in these circumstances allows a

form of collateral attack on post-discharge state court judgments, such collateral attack is

appropriate on the facts of this case. The Supreme Court has long recognized that while "[i]t is

generally true that a judgment by a court of competent jurisdiction bears a presumption of

regularity and is not thereafter subject to collateral attack," Congress's plenary power over

bankruptcy allows it to "create an exception to that principle and render judicial acts taken with

respect to the person or property of a debtor whom the bankruptcy law protects nullities and

vulnerable collaterally."[77] In line with this principle, the Supreme Court has declined to apply

---

[75] ECF No. 18 at 23–24.

[76] *See Oman*, 194 P.3d at 965–66. Creditors, of course, are just as capable of arguing that their debts were *not* discharged as a debtor is of arguing that they were through an affirmative defense. If creditors want the state court to rule on the dischargeability issue they can raise it, but that is not what happened in this matter. Here, Brent did not raise the dischargeability issue before the state court. When Troy did, Brent successfully argued that the state court should not reach the issue. ECF No. 19-1 at 344-49. Additionally, if a creditor in this type of situation is not aware that its claims were discharged until a contempt action is brought against them, they need not fear sanctions because they did not knowingly and willfully violate the discharge.

[77] *See Kalb v. Feuerstein*, 308 U.S. 433, 438–39 (1940); *see also Int'l Longshoremen's Assn, AFL-CIO v. Davis*, 476 U.S. 380, 388, 393 n.11 (1986) ("It is clearly within Congress' powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution." (citing *Kalb*)); *Texaco, Inc. v. Liberty Nat. Bank & Tr. Co. of Oklahoma City*, 464 F.2d 389, 392 (10th Cir. 1972) ("This power of the Congress to legislate on the subject of bankruptcies is rendered superior to all state laws upon the subject and it may be so exercised as to exclude all conflicting proceedings in state or federal courts." (citing *Kalb*)). In *Kalb*, Congress had validly divested state courts of jurisdiction over farm foreclosure actions once the debtor whose property was being foreclosed filed a bankruptcy petition. *Id.* at 439–40. Accordingly, the Court concluded that when a state court proceeded with a foreclosure action and sale after the debtors had filed for bankruptcy, the state court's judgment was void and subject to collateral attack regardless of whether the state court's jurisdiction was challenged. *Id.* at 443–44. Although the state court in this case had the authority to decide the dischargeability *issue*, the bankruptcy court, as discussed above, had exclusive jurisdiction over Troy's claim for contempt sanctions.

claim preclusion to questions of dischargeability during bankruptcy proceedings when doing so was inconsistent with the Bankruptcy Code and the purposes of claim preclusion.[78]

While debtors can defeat post-discharge lawsuits by asserting their discharge as a defense, it would be improper to apply claim preclusion in a way that requires them to do so in a forum that cannot give them the full relief Congress has provided through sections 105, 524, and 727 of the Bankruptcy Code.[79] If the question of dischargeability is raised by either party in a post-discharge lawsuit and actually litigated, issue preclusion will properly and adequately prevent relitigation of that issue in contempt proceedings in bankruptcy court. But applying *claim* preclusion to the *issue* of whether a debt was discharged just because a debtor could defeat

---

[78] The Supreme Court expressly limited the application of claim preclusion in bankruptcy proceedings after Congress amended the bankruptcy code in 1970 to provide greater protections to debtors who receive a discharge. *See Brown v. Felsen*, 442 U.S. 127, 132, 138–39 (1979); Bankruptcy Code Amendments of 1970, Pub. L. No. 91-476, 84 Stat. 990; *see also* H.R. Rep. No. 91-1502, at 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4156, 4156 ("The major purpose of the [Pub. L. No 91-476] is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors."). In *Brown*, the Court faced the question of whether claim preclusion barred a bankruptcy court from determining whether a pre-petition judgment debt was nondischargeable during pre-discharge bankruptcy proceedings due to fraud. *Brown*, 442 U.S. at 130–31. The Court held that applying claim preclusion to the question of dischargeability during bankruptcy proceedings was inappropriate for several reasons. The Court recognized that because the debtor's bankruptcy petition was filed after the judgment establishing the debt was entered, the bankruptcy became a new defense to recovery that "upset the repose" typically justifying the application of claim preclusion. *Id.* at 133–34. The Court was also persuaded that claim preclusion should not apply to the question of dischargeability during bankruptcy because the 1970 amendments created "a statutory policy in favor of resolving [pre-discharge dischargeability] questions in bankruptcy court." *Id.* at 134–35. Giving effect to state court judgments regarding dischargeability, especially when it involved issues over which the amendments essentially granted bankruptcy courts exclusive jurisdiction, would undercut Congress's intent. *Id.* at 135–37. Lastly, the Court noted that issues relevant to dischargeability are generally irrelevant in most actions to establish a debtor's liability, so it would be inefficient and improper to apply claim preclusion in a way that would require parties to litigate issues related to dischargeability in every case seeking to establish liability out of fear that not doing so would have preclusive effects if the judgment-debtor subsequently filed bankruptcy. *Id.* at 134–38.

[79] There is no dispute that the state court had authority to determine whether Appellants' claims were discharged if that issue had been raised. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) (stating that state courts have "concurrent jurisdiction over" the question of "whether a debt has been discharged" by a bankruptcy discharge); *Beckmann v. Beckmann*, 685 P.2d 1045, 1049 (Utah 1984) ("Where the jurisdiction of the state court is invoked after bankruptcy adjudication, and no attempt is made to bring a complaint in bankruptcy court to determine dischargeability, the state court is competent to make factual findings and conclude from them whether the debt is dischargeable or not."); *Wardle v. Bowen*, No. 20031004-CA, 2005 WL 1177232, at *2 (Utah Ct. App. May 19, 2005) (unpublished) ("Bankruptcy courts and state courts share concurrent jurisdiction over several of the exceptions to discharge enumerated in 11 U.S.C. § 523(a)."). However, for the reasons discussed in this opinion, Troy did not have to raise the discharge issue in state court to preserve § 524(a)'s effects.

a creditor's attempt to establish liability in a post-discharge lawsuit does not promote the purposes of res judicata or § 524(a).

For these reasons, the bankruptcy court did not err in concluding that claim preclusion did not bar it from considering whether Appellants' claims against Troy were discharged in deciding whether their actions violated his discharge order.[80]

## II. The Bankruptcy Court Did Not Err in Concluding that Appellants Willfully Violated Troy's Bankruptcy Discharge.

Appellants also argue that the bankruptcy court erred in finding that they willfully violated Troy's discharge order.[81] The court must review the bankruptcy court's civil contempt findings for abuse of discretion.[82] In doing so, the court reviews the bankruptcy court's "conclusions of law de novo and any findings of fact for clear error."[83] A finding is clearly erroneous only if "it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made."[84]

---

[80] The cases Appellants cite in which bankruptcy courts gave claim preclusive effect to a prior state court judgment when debtors did not raise discharge as an affirmative defense are not controlling or persuasive in light of the foregoing analysis and, in any event, are distinguishable. Two of them are procedurally distinguishable because they involved the question of whether claim preclusion applied during dischargeability proceedings during the debtors' *second* bankruptcy when they failed to assert the discharge obtained during their first bankruptcy as an affirmative defense in the state court action. *See In re Morrow*, 613 B.R. 786, 792, 797 (Bankr. N.D. Okla. 2020); *Rosenbaum v. Cummings (In re Rosenbaum)*, 150 B.R. 990, 992 (Bankr. E.D. Tenn. 1992), *aff'd*, 150 B.R. 994 (E.D. Tenn. 1993). *In re Morrow* is also distinguishable because the state court actually ruled on the discharge issue which the creditor raised. *See In re Morrow*, 613 B.R. at 792, 797. The other case is distinguishable because the state court specifically classified the pre-bankruptcy debt at issue as a type of debt that is non-dischargeable under 11 U.S.C. § 523(5), and the bankruptcy court refused to reconsider that classification for purposes of determining dischargeability. *See Richards v. Richards (In re Richards)*, 131 B.R. 76, 78 (Bankr. S.D. Ohio 1991).

[81] ECF No. 18 at 31–39.

[82] *John Zink Co. v. Zink*, 241 F.3d 1256, 1259 (10th Cir. 2001).

[83] *Id.*

[84] *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1153–54 (10th Cir. 2007) (quoting *Connolly v. Harris Trust Co. of Ca. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002)).

Bankruptcy courts have civil contempt power under 11 U.S.C. § 105.[85] This power allows them to "sanction a party for violating [a debtor's] discharge injunction . . . if the party took some action prohibited by § 524(a)(2)—i.e., an action "to collect, recover or offset any [discharged] debt."[86] However, contempt sanctions are appropriate only when there "is no fair ground of doubt" as to whether a creditor's conduct violated a debtor's discharge order.[87]

The bankruptcy court found that Appellants willfully violated Troy's discharge order because they "had sufficient notice that they could not collect th[e] prepetition debt from Troy without violating the discharge injunction" and "pressed forward anyway."[88] The bankruptcy court concluded that Appellants gained knowledge of Troy's bankruptcy as early as 2010, the year Troy filed for bankruptcy.[89] In any event, the bankruptcy court concluded, Appellants were clearly given actual notice of Troy's discharge order shortly after they obtained default judgment in state court and before they initiated garnishment proceedings.[90] Thus, because Appellants knew of Troy's discharge before they tried collecting on their claims, there was no fair ground of doubt as to whether they willfully violated Troy's bankruptcy discharge.[91]

Appellants argue that the bankruptcy court's conclusions regarding willfulness are clearly erroneous because there was a fair ground of doubt regarding the dischargeability of their claims and because they acted with judicial authority at each stage of their proceedings against Troy.[92]

---

[85] *In re Paul*, 534 F.3d at 1306 ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2).").

[86] *Id.* (emphasis omitted) (third alteration in original) (quoting 11 U.S.C. § 524(a)(2)).

[87] *Taggart*, 139 S. Ct. at 1799 (emphasis omitted).

[88] Appellants' App. at 465.

[89] *Id.* at 21–23.

[90] *Id.* at 20.

[91] *Id.* at 463–66.

[92] ECF No. 18 at 34–39.

Appellants contend that because their claims against Troy were not listed during his bankruptcy, there was a reasonable question as to whether they had been discharged.[93] Thus, their initial action in state court did not violate Troy's discharge.[94] Appellants also contend that they could not have proceeded with garnishing Troy's wages without the state court's authority, and the state court granted their writ of garnishment even after Troy had notified it of his bankruptcy discharge.[95]

Having thoroughly reviewed the record, the court is not convinced that any of the bankruptcy court's findings were clearly erroneous. Contrary to Appellants' assertion, there was no *objectively* reasonable basis for them to believe that their debt had not been discharged in Troy's bankruptcy. Based on testimony provided by Brent, Troy, and some of their family members, the bankruptcy court reasonably inferred that Brent had knowledge of Troy's bankruptcy before initiating the state court action against Troy in 2018,[96] and Appellants do not contest that conclusion.[97] Under the Tenth Circuit case of *In re Parker*, Appellants claims' against Troy were pre-petition claims that were discharged regardless of whether they were listed because Troy's was a "no asset" bankruptcy under Chapter 7.[98] Appellants initiated their state

---

[93] *Id.* at 35.

[94] *Id.*

[95] *Id.* at 35–39.

[96] Appellants' App. at 458–62. The bankruptcy court found Brent's testimony that he did not know of Troy's bankruptcy before the state court action not credible and outweighed by the credible testimony of other family members who provided evidence that he did. *Id.* The court must give great deference to these findings. *See In re Ford*, 492 F.3d at 1157 ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." (quoting *Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996))). In any event, it is undisputed that Brent had actual knowledge of Troy's bankruptcy prior to moving for the writ of garnishment and, obviously, before his enforcement of the garnishment.

[97] ECF No. 18 at 34–36 (arguing that there was reasonable doubt regarding whether their claims were discharged because their claims were not listed, not because they did not know of Troy's bankruptcy).

[98] *Watson v. Parker (In re Parker)*, 264 B.R. 685, 695–98 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002) (holding that determining whether a claim is a pre- or post-petition claim is based on when the conduct giving rise to the claim occurred and that failure to list a claim in a no asset Chapter 7 case does not render it non-dischargeable under 11 U.S.C. § 523(a)(3)(A)).

court action against Troy even though *In re Parker* settled the question of the dischargeability of their claims.[99] That Appellants initially may not have known of *In re Parker* and its impact on the dischargeability of their unlisted claims does not mean that they had an objectively reasonable basis to believe that their attempts to collect on their claims did not violate Troy's bankruptcy discharge.[100]

Even if there were a fair ground of doubt as to whether Appellants' claims had been discharged because Troy did not list them in his bankruptcy, any such doubts would have become objectively unreasonable once Troy provided notice of his discharge order and *In re Parker* to Appellants shortly after they obtained the default judgment against him.[101] Although Troy could have raised his discharge as a defense to prevent the default judgment from being entered in the first place, his failure to do so, as discussed above, did not mean that the default judgment settled the issue of whether Appellants' claims had been discharged. The bankruptcy court concluded that because the default judgment was entered without the state court having considered whether the very judgment it entered was void and violative of Troy's bankruptcy discharge under 11 U.S.C. § 524(a), it was objectively unreasonable for Appellants to rely on it

---

[99]Appellants cite a number of distinguishable cases. In *In re Hazelton*, the debt the creditor believed was not discharged was scheduled as a student loan in the debtor's bankruptcy, a category of debt that is often non-dischargeable, and the debtor had made no efforts to discharge it during bankruptcy. *See In re Hazelton*, 622 B.R. 354, 358 (Bankr. W.D. Wis. 2020). The circumstances in *In re Shuey* were similar. *In re Shuey*, 606 B.R. 760, 771 (Bankr. N.D. Ill. 2019) (finding that the creditor's "state court collection actions were perhaps reasonable given that several courts had held that the claims in the nature of Creditor's were excepted from discharge pursuant to 11 U.S.C. § 523(a)(8)(A)(ii)"). In *In re Bednar*, the state court action that was alleged to have violated the debtor's discharge was an action *in rem*, which the court acknowledged does not violate bankruptcy injunctions. *See Bednar v. RCB Bank, et al. (In re Bednar)*, No. AP 18-01096, 2019 WL 3928844, at *10 (B.A.P. 10th Cir. Aug. 20, 2019). *In re Morrow* is distinguishable because the creditor raised the issue of dischargeability in the state court. *See In re Morrow*, 613 B.R. at 792, 797. Appellants have presented no argument on appeal or below as to why their claims against Troy may have been excepted from discharge, even though the bankruptcy court invited them to make such arguments. *See supra* note 44.

[100] *See Taggart*, 139 S. Ct. at 1802 ("Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope.").

[101] Appellants' App. at 1178, 1211–19, 1221.

in seeking to collect from Troy after they received notice of his discharge and *In re Parker*.[102] The court is not convinced that this conclusion was clearly erroneous.[103]

Appellants' argument that they had a reasonable basis to believe that garnishing Troy's wages did not violate his discharge because the state court allowed them to do so is also unpersuasive. As just discussed, Appellants did not have objectively reasonable grounds to believe that seeking a writ of garnishment did not violate Troy's discharge order in the first place. The fact that the state court, which did not address the merits of Troy's discharge arguments,[104] subsequently authorized Appellants to garnish Troy's wages did not create a fair ground of doubt as to whether Troy's discharge order barred them from garnishing his wages.[105]

For these reasons, the court finds that the bankruptcy court's conclusion that Appellants violated Troy's discharge willfully was not clearly erroneous.

### III. The Bankruptcy Court Did Not Abuse Its Discretion in the Amount of Attorneys' Fees It Awarded.

Appellants' final argument on appeal is that the bankruptcy court's award of attorneys' fees was clearly erroneous because it was based on inadequate records and was unreasonable and excessive.[106] An award of civil contempt sanctions for a creditor's violation of a bankruptcy

---

[102] Appellants' App. at 465–66.

[103] *See In re Ford*, 492 F.3d at 1154 (the court must "view the evidence in the light most favorable to the [bankruptcy] court's ruling" and "uphold [] any court finding that is permissible in light of the evidence" (second alteration in original) (quoting *Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994))).

[104] Contrary to Appellants' assertions, the record contains no evidence that the state court found Troy's discharge argument lacked merit because their claims had not been discharged. The state court overruled Troy's objection to garnishment only because it was untimely and the court considered it an invalid attack on the underlying judgment, which was the exact position Appellants urged it to adopt. Appellants' App. at 258–63.

[105] *See Taggart*, 139 S. Ct. at 1799; Appellants' App. at 465–66.

[106] ECF No. 18 at 40–52.

discharge may include actual damages, attorneys' fees, and punitive damages.[107] The court reviews compensatory sanctions for clear error and attorneys' fees for abuse of discretion.[108]

Here, the bankruptcy court awarded Troy $4,713.40 in compensatory damages—the amount of wages Appellants had garnished—and $62,793.00 in attorneys' fees and costs.[109] Of those attorneys' fees and costs, $1,150.00 were awarded to David M. Cook, who assisted Troy during part of the state court proceedings,[110] and $61,643.00 were awarded to Anderson & Karrenberg (A&K), which represented Troy during the bankruptcy court proceedings.[111] Although A&K initially requested a fee award of at least $80,444.00,[112] the bankruptcy court reduced A&K's award based on concessions Troy's attorneys made during the final hearing on damages and attorneys' fees.[113] Appellants challenge only the attorneys' fees awarded to A&K.[114]

Appellants first argue that the bankruptcy court should have declined to award A&K any attorneys' fees because A&K's application was inadequate.[115] They assert that A&K's records

---

[107] *See In re Slater*, 573 B.R. 247, 256 (Bankr. D. Utah 2017).

[108] *See Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1160 (10th Cir. 2020) "We review . . . the amount of a compensatory sanction for clear error."); *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 873 (10th Cir. 2018) ("We review a determination of attorneys' fees for an abuse of discretion."). Factual determinations underlying an award of attorneys' fees are reviewed for clear error as well. *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1111 (10th Cir. 1998).

[109] Appellants' App. at 612–14.

[110] *Id.* at 534–37, 614.

[111] *Id.* at 490–522, 614.

[112] *Id.* at 493.

[113] *Id.* at 613–14, 1129–34, 1167.

[114] ECF No. 18 at 40–52.

[115] *Id.* at 40–41.

contained "block billing" and did not provide adequate grounds for the court to conclude that the hours worked, and hourly rates charged, were reasonable.[116]

In the alternative, Appellants argue that even if awarding attorneys' fees to the A&K attorneys was permissible, the bankruptcy court erred by not reducing the award more than it did.[117] Appellants assert that the hourly rates the bankruptcy court based the award on were erroneous because the A&K attorneys provided no evidence regarding the reasonableness of their rates.[118] They also assert that the bankruptcy court should have reduced A&K's award more because the A&K attorneys' records included duplicative, wasteful, and excessive time entries.[119]

The bankruptcy court's award of attorneys' fees to the A&K attorneys was not an abuse of discretion on either ground. To qualify for an award of attorneys' fees, attorneys "must keep meticulous, contemporaneous time records . . . . [that] reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[120] The records submitted by the A&K attorneys met all these requirements.[121] Although the records contain some block billing, that did not disqualify them from supporting an award of attorneys' fees.[122] It is the bankruptcy court that ultimately must determine the amount

---

[116] *Id.*

[117] *Id.*

[118] *Id.* at 40–43.

[119] *Id.* at 44–52.

[120] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).

[121] Appellants' App. at 490–522.

[122] *See id.*; *Cadena*, 224 F.3d at 1215 ("[T]his court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing.").

of a fee award, including what a reasonable hourly rate is,[123] and the bankruptcy court did not abuse its discretion in using the A&K attorneys' records "to determine the time allotted by [those] attorneys to specific tasks and the reasonableness of that time."[124]

Nor did the bankruptcy court abuse its discretion in terms of the amount awarded to the A&K attorneys. After evaluating the application, briefing, and arguments regarding A&K's fees, the court concluded that Troy's attorneys had "adequate[ly] disclos[ed] . . . evidence of the time expended, the rates charged," and the necessity and reasonableness of their efforts.[125] The court further concluded that "[t]he amount of time, labor, and skill needed to adequately litigate this matter [was] greater than that of other motions for sanctions" and that the rates the A&K attorneys conceded to were "on par with similarly situated lawyers."[126] The court is compelled to defer to these conclusions unless they are clearly erroneous in light of the record or were reached through an abuse of discretion.[127]

Appellants appear to ask the court to conduct a de novo review of the reasonableness of A&K's fees because the bankruptcy court made a methodological error by failing to make

---

[123] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Lucero v. City of Trinidad*, 815 F.2d 1384 (10th Cir. 1987) ("The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area.").

[124] *See Cadena*, 224 F.3d at 1215.

[125] Appellants' App. at 1165–66.

[126] *Id.*

[127] *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988) (acknowledging that trial judges "ha[ve] intimate knowledge of the efforts expended and the value of the services rendered" in a case and their "experience with and knowledge about the course of the litigation" is entitled to deference "in the absence of an abuse of discretion"); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (holding that a court may use its own knowledge and experience to establish an appropriate rate if there is insufficient evidence of the prevailing market rate in the record); *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding, as some other circuits have, that judges do not abuse their discretion when they "rely[] on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

sufficient findings of fact.[128] However, no material methodological error occurred here.[129] The bankruptcy court made findings based on the evidence before it and its own experience and knowledge of the litigation.[130] Thus, the issue on appeal is not whether A&K's fees were reasonable, but whether the bankruptcy court committed clear error or abused its discretion in finding that the fees the A&K attorneys requested were reasonable.[131]

Because Appellants' arguments do not specifically address those issues, the bankruptcy court's award to the A&K attorneys can be upheld for that reason alone.[132] However, to the extent that some of Appellants' arguments could be characterized as arguments that the bankruptcy court abused its discretion, they fail nonetheless.

Appellants argue that the bankruptcy court erred because it awarded A&K fees for two attorneys--two partners no less--when the case could and should have been litigated by only one partner and, if necessary, a less expensive second attorney.[133] However, the bankruptcy court appropriately considered these issues in determining the amount to award. The bankruptcy court reduced the A&K attorneys' originally requested award based on their proposal to lower their typical rates, particularly the second partner's rates.[134] The bankruptcy court then concluded that the adjusted hourly rates were reasonable based on its own experience and knowledge of the litigation.[135] This was not an abuse of discretion, as there is nothing "inherently unreasonable

---

[128] *See* ECF No. 18 at 51–52 (relying on *FTC v. Kuykendall*, 371 F.3d 745, 763 (10th Cir. 2004)).

[129] *See Kuykendall*, 371 F.3d at 763 (explaining that the methodology of calculating a damage award includes factors "such as determining the proper elements of the award or the proper scope of recovery").

[130] *See supra* notes 125–26 and accompanying text.

[131] *See supra* note 108.

[132] *See Brown*, 838 F.2d at 453.

[133] ECF No. 18 at 44–45.

[134] Appellants' App. at 1137, 1167.

[135] *Id.* at 1165–66; *see also supra* notes 126–27.

about a client having multiple attorneys work" on a case, including multiple experienced attorneys, as long as the attorneys "are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer" at a reasonable hourly rate.[136]

Appellants also argue that the bankruptcy court should have reduced the A&K attorneys' award by a greater extent than it did because their records contained duplicative and improper time entries.[137] Although the bankruptcy court did not specifically address these arguments when explaining its conclusions regarding attorneys' fees,[138] it was not required to do so.[139] Appellants raised the exact same arguments before the bankruptcy court,[140] which stated that it had taken them into account before deciding that no reduction other than the one proposed by the A&K attorneys was required.[141] The bankruptcy court's finding that both of the A&K attorneys' "services were necessary and beneficial at the time they were rendered" was a permissible conclusion in light of the attorneys' records and the parties' explanations and arguments during the damages and fees hearing.[142]

---

[136] *See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1104–07 (10th Cir. 2010).

[137] ECF No. 18 at 45–46, 50.

[138] *See* Appellants' App. at 1164–68.

[139] *See Auto-Owners*, 886 F.3d at 873 ("[W]e do not require the district court to identify and justify every hour allowed or disallowed [in awarding attorneys' fees]."); *Anchondo*, 616 F.3d at 1103 (declining "to look behind the district court's affirmation that it carefully reviewed the relevant materials and determined that the hours counsel recorded were reasonable" when a party failed to make specific arguments as to how the court abused its discretion in reaching its conclusions).

[140] In fact, all of Appellants' arguments for decreasing the A&K attorneys' award on appeal echo nearly verbatim the arguments they made before the bankruptcy court. *Compare* ECF No. 18 at 44–52, *with* Appellants' App. at 543–51.

[141] Appellants' App. at 1162, 1167.

[142] *See* Appellants' App. at 490–522, 1131–33, 1165–66; *see also Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir. 1996) (under an abuse of discretion standard, courts must "not disturb a trial court's decision absent 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995))); *Exxon Corp.*, 21 F.3d at 1005 (under clear error review, courts "view the evidence in the light most favorable to the [lower] court's ruling and must uphold any [lower] court finding that is permissible in light of the evidence" (citations omitted)).

Finally, Appellants argue that the bankruptcy court erred in awarding the A&K attorneys' fees because they were so much higher than their own attorney's fees for the same litigation and because Troy had never paid them throughout the litigation. However, Appellants have not provided, nor has the court found, any authority indicating that disparity in the fees charged to each party, or a party's failure to pay its attorneys before the question of fees is settled, are grounds for finding an abuse of discretion.

For these reasons, the amount of attorneys' fees the bankruptcy court awarded to the A&K attorneys was not an abuse of discretion and, therefore, is affirmed.

## ORDER

IT IS HEREBY ORDERED that the Bankruptcy Court's Orders are AFFIRMED and Appellants' appeal is DISMISSED.

Signed October 25, 2021.

BY THE COURT

_____
David Barlow
United States District Judge